BEBENSEE v ROSS PIERCE ELECTRIC, INC.

Docket No. 55582. Argued April 8, 1975 (Calendar No. 7).—Decided June 2, 1977.

Plaintiff Norman H. Bebensee, in a complaint before the National Labor Relations Board, charged Local 58, International Brotherhood of Electrical Workers, AFL-CIO, with unfair labor practices: refusing without justification to allow him to become a member of the union local, causing Ross Pierce Electric, Inc., to discharge him from employment, and interfering with his rights under the National Labor Relations Act. Before the hearing date the National Labor Relations Board proposed as a settlement that the union pay the plaintiff $1,200 and refrain from discriminating against him; this was accepted by the union, but the plaintiff refused. Plaintiff filed a complaint in St. Clair Circuit Court, Halford I. Streeter, J. alleging that defendant Ross Pierce Electric, Inc., conspired with the other defendants in the wrongful discharge of the plaintiff, and that defendants Local 58, their business agent William Galvin, and the International Brotherhood of Electrical Workers denied the plaintiff membership in the union and conspired to discharge him wrongfully and to prevent him from gaining further employment as an electrician. The circuit court found that all defendants except Ross Pierce Electric, Inc., were liable for engaging in a common-law conspiracy to deprive the plaintiff of his right to be employed. The Court of Appeals, Quinn, P. J., and D. E. Holbrook and Peterson, JJ., reversed per curiam (Docket No. 14830) on the ground that the trial court did not have jurisdiction because the National Labor Relations Act pre-empted the subject matter of the complaint. Plaintiff appeals. *Held:*

1. Congress established a policy of national uniformity in labor relations in enacting the National Labor Relations Act and the United States Supreme Court has shaped the Federal pre-emption doctrine to protect this policy. When an activity is arguably subject to § 7 or § 8 of the National Labor Relations

REFERENCES FOR POINTS IN HEADNOTES

[1, 4–6] 48 Am Jur 2d, Labor and Labor Relations § 391 *et seq.*
[2, 3, 7–9] 48 Am Jur 2d, Labor and Labor Relations § 899 *et seq.*

Act, the states and the Federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted. The plaintiff argues that the conduct in this case, however, falls within the exception to the Federal labor law pre-emption doctrine for cases involving a breach of a union's duty of fair representation of members of the collective bargaining unit, whether or not the lawsuit was based on a collective bargaining agreement.

2. The duty of fair representation of a labor union to members of the collective bargaining unit arises out of the statutory power granted unions under the National Labor Relations Act to bargain and make binding agreements governing the individual employee's employment; the duty prohibits discrimination both in the negotiation and in the day-to-day administration of a collective bargaining agreement. The conduct alleged in the complaint, if proven, would constitute a breach of the duty of fair representation because it is discriminatory administration of the collective bargaining agreement to request that the plaintiff be discharged and to discriminate against him through the hiring hall to prevent him from securing other employment.

3. The United States Supreme Court has refused to apply the pre-emption doctrine where the particular rule of law sought to be invoked before a tribunal other than the National Labor Relations Board is so structured and administered that, in virtually all instances, it is safe to presume that judicial supervision will not disserve the interests promoted by the Federal labor statutes. The fair representation doctrine was judicially developed and the National Labor Relations Board would look to the body of Federal law as developed by the courts in treating the breach of the duty of fair representation as an unfair labor practice. This reduces the potential for conflict between decisions of the National Labor Relations Board and the courts and, when allied with the need to protect individual members of the bargaining unit from abuse of power by the union, stands as the foundation for the fair representation exception to the pre-emption rule.

4. A plaintiff wishing to avoid pre-emption must specifically present his case on a duty of fair representation theory. The complaint in this case did not specifically plead facts constituting a breach of the duty of fair representation as the foundation of the suit; thus the court would not necessarily refer to the federally developed body of law outlining the fair representation doctrine, but rather to some other body of law, perhaps

state tort law. Such a situation increases the potential for conflict with the Federal regulatory scheme, and thus such a suit must be pre-empted.

5. There is also a possibility of state jurisdiction, in addition to the fair representation exception, where the defendant's conduct is so outrageous as not to be protected under the National Labor Relations Act, where there is a substantial state interest in protecting its citizens from the conduct alleged, and where there is not a risk that the state cause of action will touch an area of primary Federal concern. In this case, the plaintiff has failed to satisfy these criteria.

The decision of the Court of Appeals is affirmed.

1. LABOR RELATIONS—NATIONAL LABOR RELATIONS ACT—PUBLIC POLICY.

Congress established a policy of national uniformity in labor relations in enacting the National Labor Relations Act and creating the National Labor Relations Board to administer that law (29 USC 151 *et seq.*).

2. LABOR RELATIONS—NATIONAL LABOR RELATIONS BOARD—COURTS—JURISDICTION.

State and Federal courts must defer to the exclusive competence of the National Labor Relations Board when an activity is arguably subject to the National Labor Relations Act if the danger of state interference with national labor relations policy is to be averted (29 USC 151 *et seq.*).

3. LABOR RELATIONS—NATIONAL LABOR RELATIONS ACT—COURTS—JURISDICTION.

State and Federal courts may exercise jurisdiction over a matter arguably subject to the National Labor Relations Act where there is a complaint of a breach of a union's statutory duty to fairly represent its members whether or not the complaint is based on a collective bargaining agreement (29 USC 151 *et seq.*).

4. LABOR RELATIONS—NATIONAL LABOR RELATIONS ACT—UNIONS—FAIR REPRESENTATION

A labor union's duty of fair representation to members of the collective bargaining unit arises out of the statutory power granted unions to bargain and make binding agreements governing the individual member's employment under the National Labor Relations Act; the duty prohibits discrimination both in the negotiation and day-to-day administration of a collective bargaining agreement (29 USC 151 *et seq.*).

5. LABOR RELATIONS—NATIONAL LABOR RELATIONS ACT—UNIONS—
   FAIR REPRESENTATION.

   An exclusive bargaining agent's statutory authority to represent
   all members of a designated bargaining unit under the Na-
   tional Labor Relations Act includes a statutory obligation to
   serve the interests of all members without hostility or discrimi-
   nation toward any, to exercise its discretion with complete good
   faith and honesty, and to avoid arbitrary conduct (29 USC 151
   *et seq.*).

6. LABOR RELATIONS—NATIONAL LABOR RELATIONS ACT—UNIONS—
   FAIR REPRESENTATION.

   Alleged conduct of a labor union toward a member of its collec-
   tive bargaining unit would constitute a breach of the duty of
   fair representation under the National Labor Relations Act if
   proven when the labor union local caused the member to be
   discharged from his employment and discriminated against him
   in preventing him from securing other employment through
   the union hall, as he had done in the past, solely because of a
   letter written to the president of the international union asking
   for help in the member's efforts to secure a transfer of member-
   ship from another local of the union into the defendant local
   (29 USC 151 *et seq.*).

7. LABOR RELATIONS—NATIONAL LABOR RELATIONS ACT—JURISDICTION
   —PRE-EMPTION.

   The Federal labor law pre-emption doctrine has not been applied
   by the United States Supreme Court where the particular rule
   of law sought to be invoked before a tribunal other than the
   National Labor Relations Board is so structured and adminis-
   tered that, in virtually all instances, it is safe to presume that
   judicial supervision will not disserve the interests promoted by
   the Federal labor statutes.

8. LABOR RELATIONS—NATIONAL LABOR RELATIONS ACT—JURISDICTION
   —PRE-EMPTION.

   A circuit court did not have subject-matter jurisdiction over an
   employee's complaint in tort alleging a common-law conspiracy
   by a former employer, a labor union, and a business agent for
   the union to deprive him of his right to work which did not
   specifically plead facts constituting a breach of the duty of fair
   representation as the foundation of the suit because the com-
   plaint alleged conduct which would be pre-empted by the
   National Labor Relations Act (29 USC 151 *et seq.*).

9. LABOR RELATIONS—NATIONAL LABOR RELATIONS ACT—JURISDICTION
    —PRE-EMPTION.

   There is a possibility of state jurisdiction over an employee's
   complaint which is arguably subject to Federal labor law where
   the defendant's conduct is so outrageous as not to be protected
   under the National Labor Relations Act, where there is a
   substantial state interest in protecting its citizens from the
   conduct alleged, and where there is not a risk that the state
   cause of action will touch on an area of primary Federal
   concern (29 USC 151 *et seq.).*

*McIntosh, Mugan & Huegli* for plaintiff.

*Miller, Klimist, Cohen, Martens & Sugerman, P. C.* (by *Bruce A. Miller* and *Samuel C. Mc-Knight),* for defendants Local 58, International Brotherhood of Electrical Workers, AFL-CIO, and Galvin.

WILLIAMS, J. The primary issue posed here is whether the National Labor Relations Act pre-empts plaintiff from bringing, in a Michigan court, this tort action charging a common-law conspiracy by a former employer, a labor union, and a business agent for the union, to deprive him of his right to work. Defendant also asserts that plaintiff should be barred from bringing his complaint to state court due to the principle of collateral estoppel and due to a failure to exhaust internal union remedies.

We hold that under *Farmer v United Brotherhood of Carpenters & Joiners of America, Local 25,* 430 US 290; 97 S Ct 1056; 51 L Ed 2d 338 (1977), plaintiff's suit is pre-empted. We need not consider the other questions posed.

## I—FACTS

Plaintiff moved from Windsor to Detroit in 1954, intending to work at his electrician's trade in the

Detroit area. At about that time, plaintiff attempted to transfer his membership in a Windsor local of the International Brotherhood of Electrical Workers to defendant Local 58 in Wayne County.

Plaintiff was unsuccessful despite repeated attempts over a period of 19 years, and was consequently disadvantaged in obtaining job referrals. According to plaintiff's testimony in the trial court, repeated requests for a hearing before the executive board of the local, pursuant to the union's grievance procedure, were a part of plaintiff's efforts to transfer membership, and these requests were ignored. Finally in September of 1967, plaintiff wrote a letter to the president of the International Brotherhood requesting assistance in securing transfer to Local 58.

The union responded by requesting that plaintiff's employer at that time, defendant Ross Pierce Electric, Inc., discharge plaintiff, a request that employer granted.

Plaintiff subsequently contacted the National Labor Relations Board, and in February of 1968 the board issued a complaint and notice of hearing charging Local 58 with unfair labor practices under § 8(b)(1) and § 8(b)(2) of the National Labor Relations Act, specifically asserting that Local 58 had without justification refused to allow plaintiff to become a member of the local, caused Ross Pierce to discharge plaintiff without cause in October of 1967, and by these and other acts interfered with plaintiff's rights under § 7 of the act.

Before the hearing date, the NLRB proposed a settlement agreement under which the union was to pay plaintiff $1,200 and agreed to refrain from discriminating against plaintiff. The union agreed to this settlement in mid-April of 1968.

Plaintiff, however, refused to become a party to

this agreement. After unsuccessfully appealing the settlement agreement, plaintiff refused to accept the $1,200 judgment and filed a civil complaint in St. Clair County Circuit Court.

In Count I of his complaint, plaintiff charged Ross Pierce Electric, Inc., with conspiring with the other defendants, such conspiracy resulting in the wrongful discharge of plaintiff. This discharge was said to be contrary "to the provisions of the National Labor Relations Act, laws of the State of Michigan and the common law".

In Count II, plaintiff charged Local 58 with repeatedly denying his application for membership, and conspiring with the other defendants to wrongfully discharge plaintiff and to blackball him from gaining further employment in his profession.

In Count III, plaintiff charged William Galvin, a business agent for Local 58, with the same wrongs outlined in Count II, again asserting that such conduct was contrary to the NLRA as well as the laws of Michigan.

In Count IV, plaintiff directed these same charges against the International Brotherhood of Electrical Workers.

The trial court without jury held that, with the exception of Ross Pierce Electric, Inc., all defendants were guilty of engaging in a common-law conspiracy to deprive plaintiff of the right to be gainfully employed as an electrician. Liability was set at $25,000.

The Court of Appeals reversed the trial court, holding that due to Federal pre-emption under the NLRA, the trial court did not have subject matter jurisdiction over plaintiff's complaint.

We granted leave to appeal on May 1, 1974.

## II—FEDERAL PRE-EMPTION UNDER THE NLRA

The threshold issue in the instant case is whether the trial court lacked jurisdiction to hear plaintiff's complaint due to Federal pre-emption under the National Labor Relations Act. Defendants argue that plaintiff's complaint could be considered only by the National Labor Relations Board.

In enacting the National Labor Relations Act, Congress established a policy of national uniformity in labor relations. This policy was to be served not only through the enactment of substantive Federal labor law, but also through the creation of centralized administration, the National Labor Relations Board, to administer that law.[1]

It has been the task of the United States Supreme Court to shape the Federal pre-emption doctrine in this area so as to protect this Congressionally established policy of uniformity, and the cornerstone of this effort is the landmark case of *San Diego Building Trades Council v Garmon,* 359 US 236; 79 S Ct 773; 3 L Ed 2d 775 (1959).

In *Garmon,* the Court was confronted with the question of whether a California court had jurisdiction to award damages for tort liability arising out of peaceful union activity that the California court had earlier found to be an unfair labor practice under the NLRA. The NLRB had refused to exercise its jurisdiction in the matter.

---

[1] The topic of Federal pre-emption under the NLRA has been a popular one with commentators. For discussion of the pre-emption doctrine, *see* Cox, *Labor Law Preemption Revisited,* 85 Harv L Rev 1337 (1972); Come, *Federal Preemption of Labor-Management Relations: Current Problems in the Application of* Garmon, 56 Va L Rev 1435 (1970); Lesnick, *Preemption Reconsidered: The Apparent Reaffirmation of* Garmon, 72 Colum L Rev 469 (1972); Note, *Preemption of State Labor Regulations Collaterally in Conflict with the National Labor Relations Act,* 37 George Wash L Rev 132 (1968).

The Supreme Court held that the state court had no jurisdiction to award damages in such a situation due to Federal pre-emption by the NLRA. In so holding, the Court established a broad test of pre-emption, expressed as follows:

"When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 US 236, 245.

The *Garmon* pre-emption test was reaffirmed by the United States Supreme Court in *Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America v Lockridge,* 403 US 274, 293; 91 S Ct 1909; 29 L Ed 2d 473 (1971); *Lodge 76, International Association of Machinists & Aerospace Workers v Wisconsin Employment Relations Commission,* 427 US 132; 96 S Ct 2548, 2552–2553; 49 L Ed 2d 396 (1976); and *Farmer v United Brotherhood of Carpenters,* 430 US 290; 97 S Ct 1056; 51 L Ed 2d 338 (1977).

There is no question that under the basic *Garmon* doctrine, plaintiff's suit would be pre-empted. The conduct here in question is clearly "arguably subject" to § 7 or § 8 of the NLRA. In point of fact, prior to the trial, the NLRB had explicitly charged in its complaint that the conduct of the union did in fact constitute an unfair labor practice under the act. Moreover, plaintiff himself contended in his complaint that the activities of the union and the employer constituted an unfair labor practice under the NLRA.

However, if the conduct which is the subject matter of the instant litigation falls within one of the exceptions to the *Garmon* doctrine established

by the United States Supreme Court or by Congress,[2] plaintiff's suit in state court would not be pre-empted and the trial court would have jurisdiction to consider that suit.

Plaintiff argues that his suit is not pre-empted under the exception to the *Garmon* doctrine recognized in *Vaca v Sipes,* 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1967), for suits involving breaches of the duty of fair representation.

In *Vaca,* an employee alleged in state court that he had been wrongfully discharged by his employer in violation of the collective bargaining agreement, and that his union had arbitrarily refused to take his grievance to arbitration under the final step of the bargaining agreement grievance procedures.

On review, the United States Supreme Court held that where there is a complaint of a breach of a union's statutory duty to fairly represent all its members, state and Federal courts may exercise jurisdiction even if the conduct complained of was arguably subject to the National Labor Relations Act. 386 US 171, 188.

Defendants argue that the instant case is not within the *Vaca* exception for three reasons:

(1) Defendants assert that the *Vaca* exception is limited to cases where there is an alleged breach of the collective bargaining agreement as well as an alleged breach of the duty of fair representation, and that plaintiff here has not alleged a breach of the collective bargaining agreement.

(2) Defendants assert that the conduct that is the subject of this litigation is not of the type exempted from the *Garmon* doctrine by *Vaca.*

[2] For a recent summary of the exceptions to the *Garmon* doctrine, *see Farmer v United Brotherhood of Carpenters,* 430 US 290; 97 S Ct 1056; 51 L Ed 2d 338 (1977).

(3) Defendants assert that the fact that plaintiff's complaint labeled the conduct complained of a "tortious conspiracy" to deprive plaintiff of the rights he was entitled to under his contract of employment takes this case outside of the *Vaca* exception.[3]

Defendant is clearly wrong in his first assertion. While there has been some controversy as to whether the *Vaca* exception extended to cases where the alleged breach of the duty of fair representation arose independent of an allegation of a breach of the collective bargaining agreement,[4] the

---

[3] Defendants have also argued that *Local 100, United Association of Journeymen & Apprentices v Borden*, 373 US 690; 83 S Ct 1423; 10 L Ed 2d 638 (1963), and *Local No 207, International Association of Bridge, Structural & Ornamental Iron Workers Union v Perko*, 373 US 701; 83 S Ct 1429; 10 L Ed 2d 646 (1964), two Supreme Court cases with fact situations similar to that of the instant case where state suits were held to be pre-empted, mandate pre-emption here.

However, *Borden* and *Perko* were pre-*Vaca* cases. In fact, the Supreme Court in *Borden* explicitly refused to consider the possible effect of the fair representation doctrine on the pre-emption question. 373 US 690, 696, fn 7.

The Supreme Court avoided the question perhaps because the jurisdiction of the NLRB over complaints of a breach of the duty of fair representation was so uncertain. The board's decision in *Miranda Fuel*, 140 NLRB 181; 51 LRRM 1584 (1962), declaring a breach of the duty an unfair labor practice had just been handed down and had yet to be enforced by a United States Circuit Court. *See Humphrey v Moore*, 375 US 335, 344; 84 S Ct 363; 11 L Ed 2d 370 (1964), where the Court indicates that the status of the breach of the duty of fair representation as an unfair labor practice was uncertain even in 1964.

In any case, it is clear that *Borden* and *Perko* cannot be controlling in the instant case where the core of plaintiff's argument against pre-emption rests on the *Vaca* exception for suits involving an alleged breach of the duty of fair representation.

[4] *See* Bryson, *A Matter of Wooden Logic: Labor Law Preemption & Individual Rights*, 51 Tex L Rev 1037, 1063–1070 (1973); *Sokolowski v Swift & Co*, 286 F Supp 775 (D Minn, 1968); *Evans v Local Union 2127, International Brotherhood of Electrical Workers, AFL-CIO*, 313 F Supp 1354 (ND Ga, 1969); *Tyree v Edwards*, 287 F Supp 589 (D Alas, 1968); *Teamsters Local 42 v Superior Court*, 20 Cal App 3d 517; 97 Cal Rptr 765 (1971); *Beriault v Local 40, Super Cargoes & Checkers, International Longshoremen's & Warehousemen's Union*, 340 F Supp 155 (D Or, 1972).

controversy was resolved in *Lockridge, supra,* where, in examining the development of the preemption doctrine, the Supreme Court interpreted *Vaca* as follows:

"[I]n *Vaca v Sipes,* 386 US 171 (1967), we held that an action seeking damages for injury inflicted by a breach of a union's duty of fair representation was judicially cognizable in any event, that is, even if the conduct complained of was arguably protected or prohibited by the National Labor Relations Act *and whether or not the lawsuit was bottomed on a collective agreement."* 403 US 274, 299. (Emphasis added.)

*Lockridge* thus contradicts defendants' argument that the applicability of the *Vaca* exception is contingent upon the allegation of a breach of the collective bargaining agreement.

With regard to defendant's contention that the subject matter of the instant suit is not of the type exempted from pre-emption under *Vaca,* an examination of the development of the duty of fair representation doctrine would seem to indicate otherwise.

The duty of fair representation was initially formulated as a duty arising out of the authority granted unions under § 2 of the Railway Labor Act and prohibiting racial discrimination in the negotiation of collective bargaining agreements. *Steele v Louisville & N R Co,* 323 US 192; 65 S Ct 226; 89 L Ed 173 (1944). However, it is presently well established that the duty of fair representation similarly arises out of the statutory power granted unions under § 9 of the National Labor Relations Act to bargain exclusively for the members of a bargaining unit and to make binding agreements governing the individual employee's employment, and that the duty also prohibits non-racial dis-

crimination. *Ford Motor Co v Huffman,* 345 US 330, 337; 73 S Ct 681; 97 L Ed 1048 (1953). This duty is owed to all members of the collective bargaining unit represented by the union. *Ford Motor Co v Huffman, supra; Humphrey v Moore,* 375 US 335; 84 S Ct 363; 11 L Ed 2d 370 (1964).[5]

The most authoritative test for a breach of the duty of fair representation is found in *Vaca, supra,* where the United States Supreme Court stated as follows:

"Under [the fair representation] doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." 386 US 171, 177.

---

[5] In *Humphrey v Moore,* the United States Supreme Court states in this regard as follows:

"The undoubted broad authority of the union as exclusive bargaining agent in the negotiation and administration of a collective bargaining contract is accompanied by a responsibility of equal scope, the responsibility and duty of fair representation [citations omitted]. 'By its selection as bargaining representative it has become the agent of all the employees, charged with the responsibility of representing their interests fairly and impartially.' *Wallace Corp v Labor Board,* 323 US 248, 255 [65 S Ct 238; 89 L Ed 216 (1944)]. The exclusive agents' obligation 'to represent all members of an appropriate unit requires [it] to make an honest effort to serve the interests of all those members, without hostility to any * * * ' and its powers are 'subject always to complete good faith and honesty of purpose in the exercise of its discretion.' *Ford Motor Co v Huffman,* 345 US 330, 337–338." 375 US 335, 342.

*See also Wallace Corp v National Labor Relations Board,* 323 US 248; 65 S Ct 238; 89 L Ed 216 (1944), where the United States Supreme Court states:

"The duties of a bargaining agent selected under the terms of the [National Labor Relations] Act extend beyond the mere representation of the interests of its own group members. By its selection as bargaining representative, it has become the agent of all the employees, charged with the responsibility of representing their interests fairly and impartially. Otherwise, employees who are not members of a selected union at the time it is chosen by the majority would be left without adequate representation." 323 US 248, 255–256.

See also *Lowe v Hotel & Restaurant Employee's Union, Local 705,* 389 Mich 123, 145; 205 NW2d 167 (1973); *Miranda Fuel Co,* 140 NLRB 181; 51 LRRM 1584 (1962).

For purposes of the instant case, it is important to recognize that this duty goes beyond fair representation in contract negotiations. See, for example, *Conley v Gibson,* 355 US 41; 78 S Ct 99; 2 L Ed 2d 80 (1957), where the plaintiff's complaint alleged in part that the complaining black workers were wrongfully discharged by their employer, and that the union, "acting according to plan" refused to protect their jobs or help them with their grievances because they were blacks. The complaint had been dismissed by the trial court on the ground that it had no jurisdiction over the controversy.

The United States Supreme Court reversed, stating in part as follows:

"If these allegations are proven there has been a manifest breach of the union's statutory duty to represent fairly and without hostile discrimination all the employees in the bargaining unit. * * * The bargaining representative's duty not to draw 'irrelevant and invidious' distinctions among those it represents does not come to an abrupt end * * * with the making of an agreement between union and employer. Collective bargaining is a continuing process. Among other things, it involves day-to-day adjustments in the contract and other working rules, resolution of new problems not covered by existing agreements, and the protection of employee rights already served by contract. The bargaining representative can no more unfairly discriminate in carrying out these functions than it can in negotiating a collective agreement. A contract may be fair and impartial on its face yet administered in such a way, with active or tacit consent of the union, as to be flagrantly discriminatory against some members of the bargaining unit." 355 US 41, 46.

See also *Retana v Apartment, Motel, Hotel & Elevator Operators Union, Local 14, AFL-CIO,* 453 F2d 1018, 1024 (CA 9, 1972).

Under *Conley* and the other cited cases, it would seem that the alleged request by Bebensee's union that he be discharged and the alleged hiring hall discrimination would, if true, constitute a breach of the duty of fair representation because such conduct is discriminatory administration of the collective bargaining agreement.

This conclusion raises the final allegation posed by defendant, *i.e.* that plaintiff cannot avoid pre-emption under *Vaca* because he did not specifically plead a breach of the duty of fair representation.

The very recent case of *Farmer v United Brotherhood of Carpenters & Joiners of America, Local 25,* 430 US 290; 97 S Ct 1056; 51 L Ed 2d 338 (1977), seems to indicate that defendant is correct in this assertion, and that plaintiff's suit is preempted.

In *Farmer,* plaintiff was a carpenter who became embroiled in certain union controversies, and who was apparently harassed and discriminated against in hiring hall referrals by his union. He brought suit against the union in a California Superior Court alleging 1) discrimination in hiring hall referrals, 2) outrageous conduct causing emotional distress resulting in bodily injury, 3) breach of the collective bargaining agreement, and 4) breach of his membership contract with his union.

Plaintiff was allowed to proceed to trial on the outrageous conduct count of his complaint, and received a substantial judgment under this theory. The other counts of the complaint were dismissed before trial on pre-emption grounds. These dismissals were not appealed.

The trial court's judgment on the outrageous conduct theory was appealed. The United States

Supreme Court granted certiorari and held that state court jurisdiction had not been pre-empted for cases involving tortious outrageous conduct resulting in emotional distress. However, the Court remanded because the evidence actually produced at trial did not focus so much on the emotional stress basis for "outrageous conduct" as on employment discrimination, which presented an unacceptable risk of state court interference with the Federal regulatory scheme.

In assessing *Farmer's* impact on *Vaca,* it should first be understood that the Supreme Court reaffirmed *Vaca* in the *Farmer* opinion, citing it as one of the recognized exceptions to the *Garmon* preemption doctrine. 430 US 297. Clearly then, *Vaca* remains good law.

However, it is also significant that the *Farmer* Court did not consider the impact of *Vaca* on plaintiff's claim that his suit was not pre-empted, apparently because plaintiff's suit was not presented on a duty of fair representation theory.[6]

In the eyes of the United States Supreme Court, the importance of structuring a suit specifically in terms of the *Vaca* duty of fair representation is that such structuring requires the case to be argued and considered in terms of Federal law— NLRA and Federal court decisions. This is evident in *Farmer* from its characterization of the rationale for the *Vaca* exception. The Court stated as follows:

"We also have refused to apply the pre-emption doc-

---

[6] Examination of the plaintiff's brief in *Farmer* indicates that plaintiff did in fact argue that his suit was not pre-empted because of the *Vaca* exception. The United States Supreme Court declined to consider this question, stating as follows:

"[Plaintiff] did not appeal the Superior Court's ruling sustaining the demurrer with respect to the claims of discrimination and breach of contract, and we thus have no occasion to consider the applicability of the pre-emption doctrine to those counts." 430 US 293, fn 3.

trine 'where the particular rule of law sought to be invoked before another tribunal is so structured and administered that, in virtually all instances, it is safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes'. *Motor Coach Employees v Lockridge,* 403 US at 297–298. See *Vaca v Sipes,* 386 US 171 (1967) (duty of fair representation cases)." 430 US 297.

The Court is apparently here referring in part to the fact, as noted in *Vaca,* that the fair representation doctrine was judicially developed, and that the NLRB has looked to the doctrine *as developed by the Federal courts* in treating a breach of the duty of fair representation as an unfair labor practice. 386 US 171, 181. The fact that both a court and the NLRB would look to the same body of Federal law would significantly reduce the potential for conflict. This reduced potential for conflict, when allied with the need to protect individual members of the bargaining unit from abuse of power by the union, stands as the foundation of the *Vaca* exception.[7]

Where a plaintiff, such as we have in the instant

---

[7] In *Vaca,* the Court discusses this point as follows:

"The collective bargaining system as encouraged by Congress and administered by the NLRB of necessity subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit. * * * Since [the *Steele, supra]* decision, the duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law. Were we to hold * * * that the courts are foreclosed * * * from this traditional supervisory jurisdiction, the individual employee injured by arbitrary or discriminatory union conduct could no longer be assured of impartial review of his complaint, since the Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint." 386 US 171, 182.

In other words, the structure of the NLRA quite properly emphasizes the protection of the collective interest of workers. The courts must remain a forum where the employee can present complaints of abuse of his individual rights by the union.

case, does not specifically plead and argue the duty of fair representation theory as the foundation of his suit, the court would *not* necessarily refer to this federally developed body of law outlining the fair representation doctrine, but rather to some other body of law, perhaps state tort law. Such a situation increases the potential for conflict with the Federal regulatory scheme, and thus such a suit must be pre-empted.

We hold that under *Farmer,* a plaintiff wishing to avoid pre-emption under *Vaca* must specifically present his case on a duty of fair representation theory. This means plaintiff must specifically plead facts constituting a breach of duty of fair representation. It is the conduct, not the label, which determines pre-emption. Because plaintiff in the instant case did not present his case in this way, he did not establish jurisdiction under *Vaca* and *Farmer.*

In addition to the *Vaca,* or duty of fair representation, per se exception[8] to Federal pre-emption, *Farmer* recognized the possibility of state jurisdiction where three factors are satisfied.

The first factor is whether the defendant's conduct is protected under the NLRA; to the extent that it is, state courts may not consider whether the defendant's conduct generates liability because to do so would erode the protection under the

---

[8] The Supreme Court recognized in *Farmer* that duty of fair representation cases are one of several "classes" of cases exempted from pre-emption. The Supreme Court explained:

" '[W]e [cannot] proceed on a case-by-case basis to determine whether each particular final judicial pronouncement does, or might reasonably be thought to, conflict in some relevant manner with federal labor policy. This Court is ill-equipped to play such a role and the federal system dictates that this problem be solved with a rule capable of relatively easy application, so that lower courts may largely police themselves in this regard.' *Motor Coach Employees v Lockridge,* 403 US 289–290." 430 US 296, fn 7.

Federal act. In *Farmer* the Court held that the
defendant's "outrageous conduct" alleged by the
employee was clearly not protected under the act.
Similarly, Bebensee alleges conspiracy and dis-
crimination, conduct that is not colorably legiti-
mate union activity and therefore not protected
under the NLRA.

The second factor identified in *Farmer* is
whether the state has a "substantial interest" in
protecting its citizens from the conduct alleged by
the employee. In *Farmer,* the Court concluded that
there was a substantial interest in protecting
workers from "outrageous conduct". Although, in
the instant case, as in all others, the state has an
interest in protecting workers from discriminatory
treatment by a union, such an interest would
arguably appear to be adequately protected by the
available Federal administrative remedies. To the
extent that the alleged conduct is not "outra-
geous" or does not involve violence, *Farmer* sug-
gests that there is no substantial state interest in
providing a forum.

The third factor identified by the Court con-
cerned the risk that the state cause of action will
"touch on an area of primary federal concern". In
*Farmer,* the Court held that since the employee's
allegations concerned the outrageous conduct caus-
ing severe emotional distress could be treated by a
properly instructed jury as distinct from his alle-
gations of job-related discrimination, the state tort
action could be "adjudicated without resolution of
the 'merits' of the underlying labor dispute". Un-
like *Farmer,* the allegations in the instant case are
likely to require the trial court to consider
"whether a union discriminated * * * against an
employee in terms of employment opportunities".
Under such circumstances, there is a substantial

risk that the instant case will touch on an area of primary Federal concern.

### III—Conclusion

We therefore hold that state court jurisdiction is pre-empted in the instant case first because Bebensee has failed to present a breach of the duty of fair representation and second because he has failed to satisfy the criteria for the separate and different pre-emption set forth in *Farmer.* We affirm the Court of Appeals reversal of the trial court.

KAVANAGH, C. J., and LEVIN, COLEMAN, and FITZGERALD, JJ., concurred with WILLIAMS, J.

RYAN and BLAIR MOODY, JR., JJ., took no part in the decision of this case.