DEMINGS v CITY OF ECORSE

Docket No. 72407. Argued April 3, 1985 (Calendar No. 6).—Decided
    November 7, 1985.

Alvin Demings was promoted from the rank of patrolman to the
    rank of detective by the City of Ecorse Police and Fire Commis-
    sion. Thereafter, Frank Chirillo, a fellow police officer with
    more departmental seniority than the plaintiff filed a griev-
    ance, claiming that the promotion of the plaintiff violated the
    terms of the collective bargaining agreement between the city
    and the Police Officers Association of Michigan, the exclusive
    bargaining agent both for the plaintiff and Chirillo. An arbitra-
    tor granted the union's request that the plaintiff and his
    attorney be excluded from the hearing, but permitted the
    plaintiff to submit written arguments, and subsequently ruled
    that the promotion be reconsidered. The city rescinded the
    plaintiff's promotion and returned him to the rank of patrol-
    man. Following refusal by the union to pursue a grievance in
    the plaintiff's behalf, he brought an action in the Wayne
    Circuit Court against the City of Ecorse and the Ecorse Police
    and Fire Commission, alleging breach of contract and discrimi-
    nation on the basis of race, and against the union, alleging
    breach of its duty of fair representation by excluding the
    plaintiff and his attorney from the Chirillo arbitration and by
    refusing to file a grievance on his behalf. In addition, the
    plaintiff sought a temporary injunction to restrain the city
    from demoting him and monetary damages. The court, Robert
    J. Colombo, J., set aside the arbitration award, holding that the
    plaintiff's exclusion from the grievance proceeding was arbi-
    trary and capricious and constituted a denial of due process.
    Arbitration was ordered in which the plaintiff and his attorney
    were to have full opportunity to participate, and the plaintiff
    was restored to the rank and pay of detective, retroactive to the
    date of his demotion. The court also denied the union's motion
    for accelerated or summary judgment which asserted that the

REFERENCES FOR POINTS IN HEADNOTES
[1-4] Am Jur 2d, Labor and Labor Relations §§ 398 et seq.
    What constitutes unfair labor practice under state public employee
    relations acts. 9 ALR4th 20.

circuit court lacked jurisdiction over the plaintiff's complaint for the reason that the Michigan Employment Relations Commission has exclusive jurisdiction over the plaintiff and that the plaintiff had not exhausted his administrative remedies. The Court of Appeals, BRONSON, P.J., and MacKENZIE and SANBORN, JJ., affirmed, concluding that the commission does not have exclusive jurisdiction over public employees' fair representation claims (Docket No. 60492). The union appeals.

In an opinion by Justice LEVIN, joined by Chief Justice WILLIAMS, and Justices RYAN and BRICKLEY, the Supreme Court *held:*

The circuit court has concurrent jurisdiction with the Michigan Employment Relations Commission of actions alleging breach by a union of its duty of fair representation brought under the public employment relations act.

1. The public employment relations act was modeled on the National Labor Relations Act. Under the NLRA, courts have concurrent jurisdiction with the National Labor Relations Board of fair representation actions. The right of fair representation was developed judicially by the United States Supreme Court. The right concerns substantive matters not within the expertise of the NLRB or the MERC and individual rights that might better be protected by the courts. The right is intertwined in the judicial enforcement of collective bargaining agreements. In this case, no adequate reason for departing from the federal model in fair representation cases has been advanced. The provisions of the PERA that give rise to the right of fair representation are replicas of the federal provisions. The nature of the right of fair representation, as developed by the Michigan and federal courts, also appears to be substantially the same. It does not appear that the Legislature intended to depart from the federal approach in respect to, and only in respect to, the jurisdiction of the courts in fair representation actions brought by public employees.

2. The general rule that the NLRB has exclusive jurisdiction of unfair labor practice charges and that the states must defer to the administrative agency was created to permit administrative agencies to develop rules within their areas of expertise which would be enforced uniformly. Nevertheless, exceptions to the rule of exclusive agency jurisdiction of unfair labor practices have developed. Federal case law has held that the unique role played by the fair representation doctrine in the scheme of federal labor laws, and its important relationship to the judicial enforcement of collective bargaining agreements, render preemption inapplicable and, thus, both state and federal

courts have concurrent jurisdiction of fair representation actions. Rejection of exclusive agency jurisdiction in fair representation actions is justified because the fair representation doctrine was judicially developed, fair representation actions involve review of substantive areas not within the field of expertise of the NLRB, the courts are the best protectors of individual rights including enforcement of the right to fair representation, and the right of fair representation figures prominently in breach of contract actions under the NLRA. It would be incongruous for a court that has litigated the fault of an employer and a union to fashion a remedy only with respect to the employer. Like the NLRB, the MERC has no greater expertise than the courts in fair representation cases. In addition, in cases such as the instant case, breach of contract actions against the employer are combined with actions claiming breach of the duty of fair representation against the union, providing another reason for allowing the courts concurrent jurisdiction of private and public sector claims involving breach of fair representation.

3. The arbitration award at issue could have been vacated only if the union breached its duty of fair representation. Because the fair representation issue has not been tried, and the Court of Appeals addressed the questions presented on appeal in the context only of its review of the injunctive relief granted the plaintiff and the denial of the union's motion for summary judgment, remand to the trial court is required to determine whether the union's conduct violated the standards applicable in fair representation cases.

Affirmed in part and remanded.

Justice RILEY, joined by Justices CAVANAGH and BOYLE, dissenting, stated: Under the public employment relations act, the Michigan Employment Relations Commission has exclusive jurisdiction to decide claims of breach by a union of the duty of fair representation where breach of a collective bargaining agreement is pled against the employer. A union's duty to fairly represent public employees in the processing of grievances is derived from its power under the public employment relations act to act as the exclusive representative of the employees. The exclusion of the plaintiff from an arbitration hearing of a fellow officer's claim did not, as a matter of law, violate the plaintiff's right to fair representation.

1. A breach of the duty of fair representation by a union is an unfair labor practice under the public employment relations act. Case law has repeatedly interpreted this provision as vesting the Michigan Employment Relations Commission with

the exclusive jurisdiction to determine claims of unfair labor practices. The Legislature has, through the PERA, enumerated both the rights and privileges of public employees and the means of enforcing those rights. The consistent construction of the act as the dominant law in public employee labor relations is persuasive that the act's jurisdictional provision for resolution of disputes such as that in this case is controlling.

2. The public employment relations act impliedly imposes on labor organizations representing public employees a duty of fair representation. The duty arises from the right of the union, conferred by the act, to exclusively represent its members, not from a contractual relation between the union and the members. The duty applies not only in contract negotiation, but also in matters of contract administration, including the processing of grievances.

127 Mich App 608; 339 NW2d 498 (1984) affirmed in part.

### OPINION OF THE COURT

1. LABOR RELATIONS — PUBLIC EMPLOYEES — FAIR REPRESENTATION — JURISDICTION.

The circuit court has concurrent jurisdiction with the Michigan Employment Relations Commission of actions alleging breach by a union of its duty of fair representation brought under the public employment relations act.

### DISSENTING OPINION BY RILEY, J.

2. LABOR RELATIONS — PUBLIC EMPLOYEES — FAIR REPRESENTATION.

*A union's duty to fairly represent public employees in the processing of grievances is implied from its power under the public employment relations act to act as the exclusive representative of the employees; under the act, the Michigan Employment Relations Commission has exclusive jurisdiction to decide claims of breach by a union of the duty of fair representation where breach of a collective bargaining agreement is pled against the employer (MCL 423.209, 423.211; MSA 17.455[9], 17.455[11]).*

3. LABOR RELATIONS — PUBLIC EMPLOYEES — FAIR REPRESENTATION — GRIEVANCES.

*The duty of a public employees' union to fairly represent its members arises from the right of the union, conferred by the public employment relations act, to exclusively represent its members, not from a contractual relation between the union and the members; the duty applies not only in contract negotiation, but also in matters of contract administration, including*

*the processing of grievances (MCL 423.209, 423.211; MSA 17.455[9], 17.455[11]).*

4. LABOR RELATIONS — PUBLIC EMPLOYEES — FAIR REPRESENTATION — UNFAIR LABOR PRACTICE.

*A breach of the duty of fair representation by a union is an unfair labor practice under the public employment relations act; the Michigan Employment Relations Commission has exclusive jurisdiction to determine claims of unfair representation by public employees, and the procedures of the act are adequate to fully resolve such claims (MCL 423.210, 423.216; MSA 17.455[10], 17.455[16]).*

*Hurwitz, Karp, Hirschman & Wallach* (by *Martin Hirschman*) for the plaintiff.

*Law Offices of Howard & Guido* (by *Barry L. Howard*) for defendant Police Officers Association of Michigan.

Amicus Curiae:

*Hiller, Larky & Hoekenga* (by *Daniel J. Hoekenga*) for Michigan Education Association/NEA.

LEVIN, J. The issue is whether the Michigan Employment Relations Commission has exclusive jurisdiction of fair representation actions brought under the public employment relations act. We hold that the circuit court has concurrent jurisdiction with the MERC.

The PERA was modeled on the National Labor Relations Act. Under the NLRA, courts have concurrent jurisdiction with the National Labor Relations Board of fair representation actions. There are a number of reasons for concurrent jurisdiction. The right of fair representation was developed judicially by the United States Supreme Court. The right concerns substantive matters not within the expertise of the NLRB or the MERC and individual rights that might be better protected by

the courts. The right is intertwined in the judicial enforcement of collective bargaining agreements.

We are not persuaded that an adequate reason for departing from the federal model in fair representation cases has been advanced. We hold that the circuit court has concurrent jurisdiction with the MERC and, thus, that the MERC does not have exclusive jurisdiction, and affirm the judgment of the Court of Appeals.

The Court of Appeals affirmed the decision of the circuit court vacating the arbitration award, that the plaintiff, Alvin Demings, challenged in this action. That arbitration award may not properly be vacated unless the defendant Police Officers Association of Michigan breached its duty of fair representation. Because the fair representation issue has not been tried, and the Court of Appeals addressed the questions presented on appeal in the context only of its review of the injunctive relief granted Demings and the denial of the POAM's motion for summary judgment, we remand the cause to the circuit court to determine whether the POAM's conduct violated the standards applicable in fair representation cases. See *Goolsby v Detroit*, 419 Mich 651, 682; 358 NW2d 856 (1984).

I

The Ecorse Police and Fire Commission promoted Demings to the position of detective on May 5, 1980. At the time, Demings was the patrolman with the highest seniority. Corporal Frank Chirillo, however, had more departmental seniority, and he filed a grievance, claiming that the promotion of Demings violated the terms of the collective bargaining agreement between Ecorse and the POAM. The POAM was the exclusive bargaining agent for both Demings and Chirillo.

The POAM pursued Chirillo's grievance to arbitration, contending that Demings' promotion violated the collective bargaining agreement because of Ecorse's failure to post and fill the job opening as required in the agreement. In February, 1981, Chirillo's grievance was submitted to arbitration. Demings attempted to appear at the hearing with his attorney, but the POAM succeeded in having him excluded. Demings was allowed to submit his arguments in writing. In March, 1981, the arbitrator ruled in Chirillo's favor. The award stated that "[t]he employer shall reconsider the promotion of Officer Demings by offering the Detective position filled by Demings to the most senior qualified member of the bargaining unit, if other than Demings." In June, 1981, Ecorse rescinded plaintiff's promotion and resolved to keep the detective position vacant.

Following his demotion, Demings requested that the POAM employ the grievance arbitration procedure in his behalf, but the POAM refused. The contract allows only the POAM to invoke the grievance arbitration procedure. Demings filed an action in circuit court, alleging that the POAM had breached its duty of fair representation by having him excluded from the Chirillo arbitration, by refusing to file his grievance, and by challenging his promotion, but not others in the same position. An injunction "to preserve the status quo by restraining [Ecorse] from demoting" him was sought. Demings also claimed that Ecorse violated the collective bargaining agreement by demoting him and that Ecorse and the POAM discriminated against him on the basis of race. The breach of contract and racial discrimination claims are not involved in this appeal. The POAM filed an answer to the motion for injunction and moved for "accel-

erated and/or summary judgment" claiming that the circuit court lacked jurisdiction.

The circuit court denied the POAM's motion for accelerated and summary judgment, issued a temporary injunction, subsequently entered as a final order, and set aside the arbitration award, finding that the exclusion of Demings was arbitrary and capricious and, therefore, a violation of due process. The order restored Demings to the position of detective, retroactive to the date of his demotion.

The Court of Appeals concluded that the MERC did not have exclusive jurisdiction and affirmed.

## II

*Goolsby v Detroit,* 419 Mich 660-661, n 5, summarizes the relationship between the NLRA and the PERA in general, and provisions of the two acts governing the right of fair representation in particular:

> The rights and responsibilities imposed on labor organizations representing private sector employees by statutes like the National Labor Relations Act, 29 USC 151 *et seq.,* and the Railway Labor Act, 45 USC 151 *et seq.,* and by the national labor policies which those statutes implement impliedly impose on labor organizations representing private sector employees a duty of fair representation.
>
> * * *
>
> Similarly, our labor mediation act, MCL 423.1 *et seq.,* MSA 17.454(1) *et seq.,* and public employment relations act, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* are patterned after the NLRA. Thus, this Court has stated that in construing our state labor statutes we look for guidance to "the construction placed on the analogous provisions of the NLRA by the [National Labor Relations Board] and the Federal courts." *Rockwell v Crestwood School Dist Bd of Ed,* 393 Mich 616, 636; 227 NW2d 736 (1975).

. . . Consequently, since the rights and responsibilities imposed on labor organizations representing public sector employees by PERA . . . are similar to those imposed on labor organizations representing private sector employees by the NLRA, it must be concluded that PERA impliedly imposes on labor organizations representing public sector employees a duty of fair representation which is similar to the duty imposed by the NLRA . . . .

It is not suggested that the Legislature has, in defining the origin and nature of the substantive right of fair representation, departed from the federal model. The PERA provisions that give rise to the right of fair representation are replicas of the federal provisions. The nature of the right of fair representation, as developed by the Michigan and federal courts, also appears to be substantially the same. It does not appear that the Legislature intended to depart from the federal approach in respect to, and only in respect to, the jurisdiction of the courts in fair representation actions brought by public employees.

## III

The general rule is that the NLRB has exclusive jurisdiction of unfair labor practice charges.[1] The federal courts and the states must defer to the administrative agency. This "preemption doctrine was created to permit administrative agencies to develop rules within their area of expertise which would be enforced uniformly."[2]

Nevertheless, exceptions to the rule of exclusive agency jurisdiction of unfair labor practices have

[1] *San Diego Bldg Trades Council v Garmon,* 359 US 236, 245; 79 S Ct 773; 3 L Ed 2d 775 (1959); *Bebensee v Ross Pierce Electric, Inc,* 400 Mich 233, 241; 253 NW2d 633 (1977).

[2] Morris, The Developing Labor Law, p 1316.

developed. In *Vaca v Sipes,* 386 US 171, 188; 87 S Ct 903; 17 L Ed 2d 842 (1967), the United States Supreme Court held that "the unique role played by the duty of fair representation doctrine in the scheme of federal labor laws, and its important relationship to the judicial enforcement of collective bargaining agreements in the context presented here, render the . . . pre-emption doctrine inapplicable." The courts, both state and federal, have concurrent jurisdiction of fair representation actions.

A

The plaintiff in *Vaca,* Benjamin Owens, had been refused reemployment after a long sick leave. When the union decided not to take Owen's grievance to arbitration, he filed an action in a Missouri court, alleging that he had been discharged from his employment in violation of the collective bargaining agreement and that the union had breached its duty of fair representation. Included in the union's answer was the defense that the Missouri courts lacked jurisdiction because Owens was essentially claiming that the union had engaged in unfair labor practices within the exclusive jurisdiction of the NLRB.

The United States Supreme Court elaborated at least four reasons for rejecting exclusive agency jurisdiction and distinguishing the right of fair representation from other unfair labor practices. First, "[t]he doctrine was judicially developed" and "the board adopted and applied the doctrine as it had been developed by the federal courts."[3] Second, fair representation actions involve review of substantive areas not within the field of expertise of the board.[4] Third, the courts are the best protectors of individual rights including enforcement of

[3] *Id.* at 181.
[4] *Id.*

the right to fair representation.[5] Finally, the right of fair representation figures prominently in breach of contract actions under § 301, and it would be incongruous for "a court that has litigated the fault of the employer and union to fashion a remedy only with respect to the employer."[6]

The Court's reliance on the judicial origin of the right of fair representation should not be misunderstood. The Court was not saying that the right is purely a common-law right. The right is "the product of a federal common law of statutory origin."[7] How this hybrid is classified is not of critical importance. It does not appear that the Court was concerned with whether the right of fair representation is a pure common-law right or a common-law right statutorily derived. What was important is that the right was originally devised and enforced by courts.[8] The NLRB had no involvement in the creation or early enforcement of the right of fair representation; the board merely "adopted and applied" the judicial doctrine.

The early history of the enforcement of the right of fair representation in Michigan is similar. Albeit in cases arising under the NLRA, the right of fair representation was recognized in this state before 1973, when unfair labor practices by unions were brought under the jurisdiction of the MERC.[9]

---

[5] *Id.* at 182.

[6] *Id.* at 187.

[7] Morris, n 2 *supra* at 1285.

[8] *Vaca,* 386 US 181; *Bebensee,* 400 Mich 249 ("fair representation doctrine was judicially developed"); Gorman, Labor Law, p 704.

[9] See *Cortez v Ford Motor Co,* 349 Mich 108, 123; 84 NW2d 523 (1957), stating "that individual members of the union may under certain circumstances enforce fair and proper representation of their interests on the part of their union representatives by legal action." See also *Field v Local 652 UAW AFL-CIO,* 6 Mich App 140, 147; 148 NW2d 552 (1967), where an employee alleged that he had not been fairly represented by the union, and the Court of Appeals held, "State courts have jurisdiction over the subject matter of this suit . . . ."

As a result, trial and appellate courts of this state had experience adjudicating fair representation claims before the MERC obtained any jurisdiction.

The Court, adverting to the judicial origin of the right of fair representation, concluded that when the NLRB is enforcing a judicially developed doctrine, "it is safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes."[10] A primary justification for preemption is undoubtedly to avoid conflicting rules of law. The Court noted in *Vaca* that this concern is not "applicable" to fair representation actions.[11] The reason is that a court, not an agency, defined the extent of the obligation, and the agency had not altered the original formulation.[12]

The agency's lack of expertise concerning the matters at issue in a fair representation action is the second reason the Court gave for allowing the courts concurrent jurisdiction. Agency expertise has been a primary justification for exclusive jurisdiction of other unfair labor practices. Fair representation actions, however, involve review of the union's administration of the grievance machinery. "[A]s these matters are not normally within the Board's unfair labor practice jurisdiction, it can be doubted whether the Board brings substantially greater expertise to bear on these problems than do the courts, which have been engaged in this type of review since the *Steele* decision."[13]

---

[10] *Motor Coach Employees v Lockridge,* 403 US 274, 297-298; 91 S Ct 1909; 29 L Ed 2d 473 (1971). *Bebensee,* 400 Mich 249.

[11] *Vaca,* 386 US 181.

[12] See *Bebensee,* 400 Mich 249, stating that "[t]he fact that both a court and the NLRB would look to the same body of Federal law would significantly reduce the potential for conflict."

[13] *Vaca,* 386 US 181. The duty or right of fair representation was first recognized in *Steele v Louisville & N R Co,* 323 US 192; 65 S Ct 226; 89 L Ed 173 (1944). See also *Harrison v Arrow Metal Products*

The Court's analysis of the absence of administrative expertise in fair representation actions is as applicable to the MERC as it is to the NLRB. Where deference is accorded the MERC, it is based on the expertise the agency has developed in the area.[14] But like the NLRB, the MERC has no more expertise than the courts in fair representation cases. As the Court of Appeals noted, these "rights are usually enforced by courts, not by administrative agencies. There is no reason to believe that MERC's expertise in handling fair representation claims exceeds that of the courts."[15]

The Court's third reason for rejecting exclusive jurisdiction also relates to the institutional capacities of the two forums. The Court suggested in *Vaca* that courts are better able to protect the rights of individual employees than agencies: "The collective bargaining system as encouraged by Congress and administered by the NLRB of necessity subordinates the interests of an individual employee to the collective interests of all employees in the bargaining unit."[16] In terms of protecting individual employee rights, "the duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law."[17] The Court concluded that it is not enough to have this right enforced by the board. "Were we to hold, as petitioners and the Government urge, that the courts are foreclosed . . . from this traditional supervisory jurisdiction,

---

*Corp,* 20 Mich App 590, 626; 174 NW2d 875 (1969); Gorman, *supra* at 699, 704.

[14] See *Rockwell v Crestwood School Dist,* 393 Mich 616, 630; 227 NW2d 736 (1975).

[15] *Demings v City of Ecorse,* 127 Mich App 608, 622; 339 NW2d 498 (1983).

[16] *Vaca,* 386 US 182.

[17] *Id.*

the individual employee injured by arbitrary or discriminatory union conduct could no longer be assured of impartial review of his complaint, since the Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint."[18]

While this passage can be interpreted more narrowly, we believe its full import was elucidated by this Court in *Bebensee v Ross Pierce Electric, Inc,* 400 Mich 233, 249, n 7; 253 NW2d 633 (1977). After quoting the relevant section in *Vaca,* this Court noted: "In other words, the structure of the NLRA quite properly emphasizes the protection of the collective interest of workers. The courts must remain a forum where the employee can present complaints of abuse of his individual rights by the union." The Court in *Vaca* recognized the institutional differences between courts and an administrative agency and concluded that courts were more concerned with individual rights. This factor figured prominently in the *Vaca* decision that there was concurrent jurisdiction, and should be accorded similar consideration in our decision. The institutional argument is as applicable to the MERC as it is to the NLRB. Once again, we agree with the observation of the Court of Appeals: "MERC's resources may be allocated in such a way that fair representation claims are not accorded the same attention or priority that claims affecting a bargaining unit at large are."[19]

The United States Supreme Court also considered the congruity of allowing an employee to maintain a complaint against the employer in the courts and against the union before only the board where the factual predicate is essentially the same, and concluded:

[18] *Id.*

[19] *Demings,* 127 Mich App 622.

[I]t is obvious that the courts will be compelled to pass upon whether there has been a breach of the duty of fair representation in the context of many § 301 breach-of-contract actions. If a breach of duty by the union and a breach of contract by the employer are proven, the court must fashion an appropriate remedy. . . . What possible sense could there be in a rule which would permit a court that has litigated the fault of the employer and union to fashion a remedy only with respect to the employer? Under such a rule, either the employer would be compelled by the court to pay for the union's wrong—slight deterrence, indeed, to future union misconduct—or the injured employee would be forced to go to two tribunals to repair a single injury.[20]

This scenario describes exactly what happened in the instant case. Demings combined a breach of contract action against the employer with a breach of the duty of fair representation action against the union. This combination is quite common and is another reason for allowing the courts concurrent jurisdiction both in private and public sector breach of fair representation claims.

B

The foregoing examination of the *Vaca* opinion reasoning, and our conclusion that the reasoning of that opinion is equally valid in the context of the PERA (which was modeled on the NLRA), leads us to conclude that the courts have concurrent jurisdiction. This is consistent with this Court's opinion in *Goolsby.* In the course of that decision defining the substance of the right of fair representation, this Court made the following observations concerning jurisdiction:

In this state, a person claiming that a labor

---

[20] *Vaca,* 386 US 187.

organization has breached its duty of fair repre-
sentation can institute an administrative or a
judicial proceeding, the former by filing an unfair
labor practice charge with the NLRB or the MERC,
the latter by filing a complaint with a federal
district or state circuit court.[21]

## IV

The dissenting justices rely on "significant" dif-
ferences between the private sector and public
sector employee labor law under the PERA to jus-
tify the conclusion that the MERC has exclusive
jurisdiction of unfair representation claims.

### A

The dissenting justices maintain that the Con-
gress did not express an intent that the NLRB's
exclusive jurisdiction extend to unfair representa-
tion claims because when Congress, in 1947, gave
the NLRB exclusive jurisdiction of unfair labor
practices by unions, unfair representation had not
yet been recognized by the NLRB as an unfair labor
practice. In contrast, legislative intent to extend to
the MERC exclusive jurisdiction of union unfair
representation actions can be inferred because the
Legislature made unlawful unfair union labor
practices in 1973, eleven years after the NLRB
recognized unfair representation as an unfair la-
bor practice.

The Court in *Vaca* did indeed note that when
the NLRB was given exclusive jurisdiction of unfair
labor practices, the NLRB had not yet considered
breach of the duty of fair representation to be an
unfair labor practice.[22] The Court, however, used
the timing of the various provisions to show that a
mechanistic reading of the statutory language

---

[21] *Goolsby*, 419 Mich 665, n 6..
[22] *Vaca*, 386 US 177.

must be avoided. Because, in 1947, the breach of
the duty of fair representation had not been recog-
nized as an unfair labor practice, and could not be
so recognized on the basis of the language enacted,
one could not sensibly infer that the Congress had
intended that the NLRB have exclusive jurisdiction
of right of fair representation cases. The Court did
not advance the timing argument as proof of legis-
lative intent, but rather to show that a mechanis-
tic reading of the statute would not resolve the
question whether the Congress intended the right
of fair representation to be within the exclusive
jurisdiction of the NLRB. To answer that question,
the Court looked to the reasons for exclusive juris-
diction of other unfair labor practices and con-
cluded these reasons did not apply to the right of
fair representation. The timing argument is the
beginning, not the end, of the Court's analysis.

The dissenting justices argue that because
breach of the duty of fair representation was
recognized by the United States Supreme Court as
an unfair labor practice before, not after, the NLRB
was given jurisdiction of unfair labor practices, it
is proper to infer that the Legislature in enacting
the PERA did intend to treat all unfair practices
alike. This, we believe, misconstrues *Vaca.* The
Court was not there suggesting that but for the
timing problem the Congress should be presumed
to have intended to have included the right of fair
representation in the grant to the NLRB of exclu-
sive jurisdiction of unfair labor practices. To re-
solve the question of legislative intent, the Court
examined the underlying reasons for exclusive
jurisdiction.

The timing argument, in the dissenting opinion,
is flawed for other reasons including the omission
of an important date. Between the time breach of
the duty of fair representation was found by the

United States Supreme Court to be an unfair labor
practice and the time when the MERC was given
jurisdiction of unfair labor practices by unions, the
United States Supreme Court decided in *Vaca* that
the fair representation claims were an exception
to the general rule that the NLRB has exclusive
jurisdiction. In drafting the PERA, the Legislature,
as this Court has often noted, indicated an intent
to follow the federal model.[23] The provisions of the
act were replicas of the NLRA, and it is fair to
conclude that the Legislature intended them to be
interpreted similarly.[24]

## B

The dissenting justices also deem it to be a
"significant" reason for departing from the federal
framework that "the *Vaca* Court noted that the
NLRB's general counsel has unreviewable discretion
in choosing to institute an unfair labor complaint
and [that] there is no assurance that aggrieved
employees would obtain review for their com-
plaints," while the PERA provides for review of a
MERC decision "under the competent, material and
substantial evidence standard."

The Court in *Vaca* did say that if courts were
foreclosed from review of right of fair representa-
tion actions, "the individual employee injured by
arbitrary or discriminatory union conduct could no
longer be assured of impartial review . . . since
the Board's General Counsel has unreviewable
discretion to refuse to institute an unfair labor
practice complaint."[25] This statement was part of a
larger argument in which the Court suggested that

---

[23] *Rockwell v Crestwood School Dist Bd of Ed,* n 14 *supra,* 636,
where the Court said that it will look for guidance to "the construc-
tion placed on the analogous provisions of the NLRA by the NLRB and
the Federal courts."

[24] *Id.*

[25] *Vaca,* 386 US 182.

courts can be more safely trusted with protecting individual rights than a labor board, because the "principal concern" of the NLRB is the "public interest in effectuating the policies of the federal labor laws, not the wrong done the individual employee . . . ."[26]

The argument in the dissenting opinion shows only that according exclusive jurisdiction to the MERC would not be as inappropriate as according the NLRB exclusive jurisdiction, but it does not address the arguments set forth in the Court's *Vaca* opinion that the courts are the better and more appropriate forum for adjudicating fair representation claims.

## C

The dissenting opinion states, "We have repeatedly interpreted this section [§ 16 which states that violations of § 10 shall be deemed to be unfair labor practices remediable by the commission] as vesting the MERC with exclusive jurisdiction." The cases cited do indeed state that "[t]he Michigan Employment Relations Commission has exclusive jurisdiction of unfair labor practices."[27] None of the cases cited, however, concern fair representation claims. The right of fair representation is not discussed even in dicta. Undoubtedly, the MERC has exclusive jurisdiction of unfair labor practice claims in general. Fair representation claims are, however, a well-recognized exception.

## V

A disturbing consequence of departing from the federal model, would be that the only unionized workers limited to an agency remedy and denied

---

[26] *Id.* at 182, n 8.

[27] *Detroit Bd of Ed v Parks,* 417 Mich 268, 283; 335 NW2d 641 (1983).

the opportunity to maintain an action in court would be those in the public sector. Employees employed in the private sector under the NLRA can file a petition with the NLRB or an action in a United States district court or a state trial court. Employees in the private sector not covered by the NLRA may file an unfair representation claim in the circuit court. Only public employees would be limited to a MERC proceeding.

There is no reason to suppose that the unions that represent public employees are different from those representing private sector employees in terms of the need or desirability of providing a judicial remedy as an alternative to a petition with the MERC asserting an unfair labor practice. There is no reason to suppose that the MERC more so than the NLRB can be entrusted with exclusive responsibility of protecting the individual rights of union members.

The Legislature did not intend that public employees be treated differently under the PERA, a statute modeled on the NLRA, from private employees in fair representation cases. The PERA requires, rather, that they be treated the same.

In sum, we hold that the MERC does not have exclusive jurisdiction of fair representation claims arising under the PERA. The PERA is based on a federal model that allows concurrent jurisdiction of fair representation actions. There is no indication that the Legislature intended to depart from the federal model.

The judgment of the Court of Appeals is, therefore, affirmed on this issue.

## VI

The final issue is the validity of the circuit court's decision to vacate the arbitration award on

the ground that it was arbitrary and capricious to exclude Demings from the proceeding that would eventually result in the rescission of his promotion. If the POAM violated the right of fair representation, the circuit court might vacate the arbitration award.[28] If the POAM did not violate Demings' right of fair representation, the arbitration award must stand. The fair representation issue has not, however, been tried.

At a hearing on Demings' request for a preliminary injunction, the circuit court said, "[W]hen you bar a man [from a proceeding] in which his job and his livelihood is [*sic*] involved, and he is demoted as a result of a decision, you will never convince me he hasn't been deprived of his fundamental due process of law." A temporary injunction was then issued and the arbitration set aside "for the reason that the same is arbitrary and capricious in that the plaintiff, Alvin Demings, and his attorney were excluded from the hearing . . . in violation of plaintiff's fundamental rights to due process and legal counsel." The circuit court entered the provisions of the preliminary injunction as a final order. At the same time, it denied the POAM's motions for accelerated and summary judgment.

The Court of Appeals, examining the right of fair representation issue only in the context of the injunctive relief granted Demings and the accelerated and summary judgment motions, affirmed and said: "[Taking] [e]very well-pleaded allegation . . . as true . . . , factual development can possibly justify a right to recovery" on an unfair representation claim. The "factual development" referred to by the Court of Appeals has not, however, taken place.

[28] See *Saginaro v Attorney General,* 87 NJ 480, 488-489; 435 A2d 1134 (1981).

In this Court, Demings seeks to have us adopt, as a matter of law, a rule that exclusion from an arbitration hearing constitutes a violation of the right of fair representation, "[w]hen an exclusive representative takes a position at arbitration in direct conflict with the critical interests of a lone employee . . . ."[29] We decline to adopt a per se rule.

As noted earlier, the Legislature adopted the federal model in right of fair representation actions. See *Goolsby v Detroit,* 419 Mich 660-661, n 5. The United States Supreme Court has concluded that per se rules have no place in this peculiarly fact-bound inquiry. In *Vaca* the Court rejected a per se rule that would grant an employee an absolute right to have his grievance taken to arbitration, because, for the grievance machinery to work properly, the union must be given considerable discretion to determine which grievances to press and which to abandon. *Vaca v Sipes,* 386 US 190-191.[30] In an earlier case, the Court also said that there was no per se rule against a union taking a position in direct conflict with the interests of one of the employees it represents:

> [W]e are not ready to find a breach of the collective bargaining agent's duty of fair representation in taking a good faith position contrary to that of some individuals whom it represents nor in supporting the position of one group of employees

[29] In this Court, Demings, although adverting in his statement of the issue to an alleged due process right, does not present a traditional due process analysis, *i.e.,* whether there is state action, whether he has a property right warranting constitutional protection, and whether available procedures are adequate. He relies rather on cases where unions were found to have violated their duty of fair representation.

[30] See *Saginaro v Attorney General,* n 28 *supra* at 488 ("Nowhere does *Vaca* suggest that the employee be allowed to intervene in the arbitration procedure.").

against that of another. [*Humphrey v Moore,* 375 US 335, 349; 84 S Ct 363; 11 L Ed 2d 370 (1964).]

The cause is remanded to the circuit court to determine whether the POAM's conduct violated the standards in fair representation actions. See *Goolsby v Detroit,* 419 Mich 682.

## VII

We affirm the Court of Appeals decision that the circuit court has concurrent jurisdiction with the MERC. We remand the cause to the circuit court to determine whether there has been a violation of Demings' right of fair representation.[31]

WILLIAMS, C.J., and RYAN and BRICKLEY, JJ., concurred with LEVIN, J.

RILEY, J. (*dissenting*).

## I

We dissent from the majority holding that the circuit court has concurrent jurisdiction with the MERC of public employees' fair representation claims. The Court reaches that conclusion by noting that the PERA was patterned on the NLRA, under which courts have concurrent jurisdiction with the NLRB of fair representation cases. Having found no "adequate reason for departing from the federal model," the majority finds that concurrent jurisdiction is similarly appropriate in Michigan public sector cases.

---

[31] The question whether there should be any modification of the orders that have been entered by the circuit court will depend on the outcome of the trial on the fair representation issue. Demings' present status is unclear; the question whether the orders previously entered should be continued or modified during the further pendency of their proceedings is for the circuit court to decide. We intimate no opinion thereon.

Public employee labor relations in Michigan are governed by the PERA. MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.* The purpose of the PERA is set forth in the act's title:

> AN ACT to prohibit strikes by certain public employees; to provide review from disciplinary action with respect thereto; to provide for the mediation of grievances and the holding of elections; *to declare and protect the rights and privileges of public employees; and to prescribe means of enforcement and penalties for the violation of the provisions of this act.* [Emphasis added.]

Thus, the Legislature has, through the PERA, enumerated both the "rights and privileges" of public employees and the "means of enforc[ing]" those rights.[1] One of the rights guaranteed by the PERA to public employees is the right to be fairly represented by their labor organizations. *Goolsby v Detroit,* 419 Mich 651; 358 NW2d 856 (1984). To enforce that right, the Legislature has, also through the PERA, conferred upon an administrative agency (the MERC) exclusive jurisdiction of claims alleging its violation.

Bearing in mind this Court's consistent construction of the PERA as the dominant law in public employee labor relations,[2] we are persuaded that the act's jurisdictional provision for resolution of disputes like the one involved in the instant case

---

[1] Const 1963, art 4, § 48 authorizes the Legislature to "enact laws providing for the resolution of disputes concerning public employees . . . ."

[2] *Detroit Bd of Ed v Parks,* 417 Mich 268, 280; 335 NW2d 641 (1983); *Rockwell v Crestwood School Dist Bd of Ed,* 393 Mich 616, 629; 227 NW2d 736 (1975), *reh den* 394 Mich 944 (1975), *app dis sub nom Crestwood Ed Ass'n v Bd of Ed of School Dist of Crestwood,* 427 US 901 (1976); *Local 1383, Int'l Ass'n of Firefighters, AFL-CIO v City of Warren,* 411 Mich 642; 311 NW2d 702 (1981); *Central Michigan University Faculty Ass'n v Central Michigan University,* 404 Mich 268; 273 NW2d 21 (1978).

is controlling. Further, despite the basic similarity of the legislation governing Michigan public employee labor relations to that regulating private sector employees subject to the NLRA, we are persuaded that there are significant differences in the two schemes which mandate deference to the legislative choice.

## A

Section 16 of the PERA, MCL 423.216; MSA 17.455(16), provides that "[v]iolations of the provisions of section 10 shall be deemed to be unfair labor practices remediable by the commission [MERC] . . . ." We have repeatedly interpreted this section as vesting the MERC with exclusive jurisdiction to determine unfair labor practices. See *Detroit Bd of Ed v Parks,* 417 Mich 268, 283; 335 NW2d 641 (1983); *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104, 117; 252 NW2d 818 (1977); *Rockwell v Crestwood School Dist Bd of Ed,* 393 Mich 616, 630; 227 NW2d 736 (1975), *reh den* 394 Mich 944 (1975), *app dis sub nom Crestwood Ed Ass'n v Bd of Ed of School Dist of Crestwood,* 427 US 901 (1976). See also *Labor Mediation Bd v Jackson Co Road Comm'rs,* 365 Mich 645; 114 NW2d 183 (1962); *Detroit Bd of Ed v Detroit Federation of Teachers,* 55 Mich App 499, 503; 223 NW2d 23 (1974), *lv den* 394 Mich 807 (1975).

One of the practices proscribed in § 10, MCL 423.210(3); MSA 17.455(10)(3), is set forth in § 10(3)(a):

> (3) It shall be unlawful for a labor organization or its agents (a) to restrain or coerce: (i) public employees in the exercise of the rights guaranteed in section 9: Provided, That this subdivision shall not impair the right of a labor organization to

prescribe its own rules with respect to the acquisition or retention of membership therein.

The rights guaranteed in § 9, MCL 423.209; MSA 17.455(9), are:

It shall be lawful for public employees to organize together or to form, join or assist in labor organizations, to engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection, or to negotiate or bargain collectively with their public employers through representatives of their own free choice.

Defendant in the instant case argues, and we agree, that a union's breach of the duty of fair representation is an unfair labor practice under § 10(3).[3] Since violations of § 10 are within the MERC's exclusive jurisdiction according to § 16, the circuit court did not have jurisdiction over plaintiff's suit.

The majority suggests that the following statement in *Goolsby, supra,* 665, n 6, indicates that

---

[3] See *Profitt v Wayne-Westland Community Schools,* 140 Mich App 499; 364 NW2d 359 (1985), in which the Court of Appeals held that a union's breach of its duty of fair representation is an unfair labor practice under § 10(3). See also *Harris v Amalgamated Transit Union,* 122 Mich App 706; 333 NW2d 1 (1982). The *Profitt* panel cited the decision of the United States Court of Appeals for the Fifth Circuit in *United Rubber, Cork, Linoleum & Plastic Workers v NLRB,* 368 F2d 12. (CA 5, 1966), *cert den* 389 US 837 (1967). There, the court construed the provisions of the NLRA analogous to the PERA, §§ 9, 10 and 11, and reasoned "that the duty of fair representation implicit in the exclusive-representation requirement in § 9(a) of the act comprises an indispensable element of the right of employees 'to bargain collectively through representatives of their own choosing' as guaranteed in section 7." *Id.,* 17. The court concluded that a union's breach of its duty of fair representation is an unfair labor practice because it restrains the employees' right to engage in protected concerted activity. Similarly, the NLRB held that a union's breach of the duty of fair representation constitutes an unfair labor practice in *Miranda Fuel Co v Teamsters, Chauffeurs, Warehousemen & Helpers Union,* 140 NLRB 181 (1962), *enf den* 326 F2d 172 (CA 2, 1963).

our Court has already resolved this issue, and has held that jurisdiction over public employees' fair representation claims is not exclusively in the MERC, but rather is concurrent in the circuit courts and the MERC:

> In this state, a person claiming that a labor organization has breached its duty of fair representation can institute an administrative or a judicial proceeding, the former by filing an unfair labor practice charge with the NLRB or the MERC, the latter by filing a complaint with a federal district or state circuit court."

Since the issue of jurisdiction over fair representation claims was not before us in *Goolsby,* the statement was dictum and was not intended as an absolute ruling on the jurisdictional issue.

### B

As the majority correctly notes, the NLRB has exclusive jurisdiction over most unfair labor practices. In *Vaca v Sipes,* 386 US 171, 188; 87 S Ct 903; 17 L Ed 2d 842 (1967), a closely divided United States Supreme Court held, however, that courts have concurrent jurisdiction of fair representation actions even though the conduct complained of is arguably subject to the NLRA.[4] Having reviewed the *Vaca* Court's reasons advanced in support of its decision to create an exception to exclusive agency jurisdiction for fair representation suits in the private sector, we are not persuaded that an analogous exception is warranted for fair representation suits in the public sector under the PERA.

---

[4] Justices Fortas and Harlan, and Chief Justice Warren concurred in the result, but concluded that a complaint that a union has breached its duty of fair representation is subject to the *exclusive jurisdiction* of the NLRB, noting the NLRB's preemptive jurisdiction over most unfair labor practices. Justice Black dissented, expressing his total displeasure with the majority decision.

The first reason set forth by the *Vaca* Court for rejecting exclusive agency jurisdiction was that the substantive fair representation doctrine was developed by the courts, not by the NLRB. Preemptive agency jurisdiction, which is often warranted to avoid conflicting rules of law, was not deemed necessary in fair representation cases because the NLRB would simply apply the judicial doctrine.

The majority suggests that because Michigan courts had similarly recognized the right of fair representation in cases arising under the NLRA before the concept of unfair labor practices was brought under the MERC's jurisdiction, we should follow the federal procedural scheme.

We do not dispute that the substantive doctrine was judicially developed. It must be remembered, however, that the doctrine has always been grounded upon a union's statutorily imposed duty conferring its right to act as the exclusive bargaining agent.[5] Until the enactment of the PERA in 1965, public employees did not enjoy the substantive collective bargaining rights possessed by employees in the private sector. See *Wayne Co Civil Service Comm v Bd of Supervisors,* 384 Mich 363, 374; 184 NW2d 201 (1971). Moreover, we are persuaded that blind adherence to the federal procedural scheme is not necessarily mandated. In this regard, we believe that the majority overlooks some details of the PERA's legislative history which are, although perhaps not dispositive, relevant to any analysis of this jurisdictional question.

First, even prior to the enactment of § 10(3) of the PERA, the MERC had suggested that its jurisdiction extended to claims based on alleged breaches of the duty of fair representation. *Reeths-Puffer*

---

[5] The Railway Labor Act was the statute under which the duty was first recognized. Subsequently, the United States Supreme Court held that the NLRA imposes a similar duty. See discussion in Part II.

*School Dist v Wilder,* 1970 MERC Lab Op 674, 678, aff'd on other grounds sub nom *MERC v Reeths-Puffer School Dist,* 391 Mich 253; 215 NW2d 672 (1974). Also, *Vaca,* which held that fair representation claims in the private sector would be treated differently than other unfair labor practices, was released well before § 10(3) of the PERA was enacted in 1973. Yet § 10(3) does not distinguish fair representation claims from other unfair labor practices.

The Legislature is presumed to act with some knowledge of existing laws and decisions. *Scholten v Rhoades,* 67 Mich App 736; 242 NW2d 509 (1976). We suggest that these points indicate that the Legislature chose to depart from the federal scheme as to procedure and not carve out an exception to the PERA's exclusive jurisdiction.[6]

Another reason cited by the *Vaca* Court and by the majority here for allowing concurrent jurisdiction was an alleged lack of agency expertise in fair representation cases. The Court thus distinguished fair representation actions from other unfair labor practice actions, in which agency expertise is a main justification for affording the agency exclusive jurisdiction. We disagree for two reasons.

First, it does not necessarily follow that courts

---

[6] In support of its decision to create an exception to exclusive agency jurisdiction for fair representation suits, the *Vaca* Court noted that

"Congress itself has carved out exceptions to the Board's exclusive jurisdiction: Section 303 of the Labor Management Relations Act, 1947, 61 Stat 158, 29 USC § 187, expressly permits anyone injured by a violation of NLRA § 8(b)(4) to recover damages in a federal court even though such unfair labor practices are also remediable by the Board; § 301 of that Act, 61 Stat 156, 29 USC § 185, permits suits for breach of a collective bargaining agreement regardless of whether the particular breach is also an unfair labor practice within the jurisdiction of the Board (see *Smith v Evening News Ass'n,* 371 US 195 [83 S Ct 267; 9 L Ed 2d 246 (1962)]). . . ." *Vaca, supra,* 179-180.

Unlike the federal scheme, the Legislature has not created similar exceptions in the PERA. See *Lamphere, supra,* 123.

have jurisdiction merely because it cannot be said that the agency has *more* expertise than the courts concerning the matter involved.

More importantly, we believe that fair representation actions are precisely that type of matter within the scope of the MERC's expertise. This Court has acknowledged the MERC's "special expertise in statutory unfair labor practice matters." *Detroit Fire Fighters Ass'n v Detroit,* 408 Mich 663, 684; 293 NW2d 278 (1980), see also *Rockwell, supra,* 630. And, while the *Vaca* Court opined that the relationship between the union and the individual employee was "merely peripheral," we conclude, rather, that this relationship is essential to the effective administration of the PERA. The relationship between an employee and a union harbors complicated problems regarding status (such as in the instant matter) which, we believe, are best left to the administrative agency responsible for the implementation of the act.

Another reason for concurrent jurisdiction advanced in *Vaca* dealt with the concern that some fair representation claims might go unredressed if the NLRB was given exclusive jurisdiction. This could happen, the Court noted, because the NLRB's general counsel has unreviewable discretion in choosing to institute an unfair labor practice complaint.

The procedure under the PERA eliminates that concern:

> [The PERA directs] that "[a]ny proceeding" relating to statutory unfair labor practice charges "shall be conducted pursuant to chapter 4 of [the Michigan Administrative Procedures Act]", MCL 423.216(a); MSA 17.455(16)(a); and . . . [requires] that MERC make findings of fact in resolving unfair practices complaints, and that MERC's decisions be reviewable as a matter of right in the Court of

Appeals under the competent, material, and sub-
stantial evidence standard.[8]   MCL   423.216(d),
423.216(e); MSA 17.455(16)(d), 17.455(16)(e).

---

[8] See Const 1963, art 6, § 28; see also MCL 24.306; MSA
3.560(206).

---

[*Detroit Fire Fighters Ass'n, supra,* 678-679.]

Despite this safeguard under the PERA, the ma-
jority believes that the trial courts are neverthe-
less more concerned with and better able to pro-
tect individual rights. The majority infers that the
MERC is more concerned with protecting the collec-
tive interests of workers than with an individual
worker's rights, yet offers no hard support for this
bald allegation.

Thus, we conclude that there is no reason to
believe that the MERC will not give an employee's
fair representation claim its due consideration.
Further, we believe that the procedures of the
PERA are adequate to fully resolve fair representa-
tion claims. MCL 423.216(b); MSA 17.455(16)(b)
indicates, in pertinent part, that the MERC can
"take such affirmative action including reinstate-
ment of employees with or without back pay, as
will effectuate the policies of this act." See *Senior
Accountants, Analysts & Appraisers Ass'n v De-
troit,* 60 Mich App 606; 231 NW2d 479 (1975), *aff'd*
399 Mich 449; 249 NW2d 121 (1976). And, the
Supreme Court has held that punitive damages
"may not be assessed against a union that
breaches its duty of fair representation by failing
properly to pursue a grievance." *Int'l Brotherhood
of Electrical Workers v Foust,* 442 US 42, 52; 99 S
Ct 2121; 60 L Ed 2d 698 (1979). Thus, we believe
that such claims can and will be resolved by the
MERC.

Finally, the majority adopts the *Vaca* Court's

conclusion that it would be incongruous to permit an employee to bring an action in a court for breach of the collective bargaining agreement, but restrict him to an agency forum for his complaint against the union. The statement that the "factual predicate [of the two actions] is essentially the same" (*ante,* p 62) obscures the undeniable basic difference between the actions. See *Vaca, supra,* 200-202 (Fortas, J., *concurring in the result*). And, simply because it is "quite common" (*ante,* p 63) to combine a breach of contract action against the employer with a fair representation action against the union is not, to us, a compelling reason to allow concurrent jurisdiction when the Legislature has provided for exclusive agency jurisdiction of the action against the union.

## C

It is true that under our approach only public employees would be restricted to the agency forum for resolution of the one class of unfair labor practice claims at issue in the instant case. We would emphasize, however, that the bulk of unfair labor practice actions in both the public and private sectors are subject to exclusive agency jurisdiction. Further, the PERA provides that a public employee who is dissatisfied with the MERC's decision on his fair representation claim may obtain review in the Court of Appeals. Therefore, we do not believe that our approach is as unfair and unreasonable as the majority suggests.

We conclude that the MERC has exclusive jurisdiction of plaintiff's claim against his union.

## II

In our order granting leave to appeal, we directed the parties to address the issue whether the

duty of fair representation is a common-law right not statutorily derived.[7] We have considered the issue and conclude that the duty is imposed by statute.

Prior to recognition of the duty of fair representation, the principal control on unions was political, *i.e.,* dissatisfied members could replace their union by vote.[8]

The duty of fair representation was first recognized in *Steele v Louisville & N R Co,* 323 US 192; 65 S Ct 226; 89 L Ed 173 (1944), and *Tunstall v Brotherhood of Locomotive Firemen,* 323 US 210; 65 S Ct 235; 89 L Ed 187 (1944), a pair of cases involving alleged racial discrimination by unions certified as exclusive bargaining agents under the Railway Labor Act (RLA). The Court in *Steele* held that if the RLA granted exclusive bargaining authority to a union "without any commensurate statutory duty toward its members, constitutional questions arise. For the representative is clothed with power not unlike that of a legislature which is subject to constitutional limitations . . . ." *Steele, supra,* 198. The Court avoided these constitutional difficulties by finding that the RLA implicitly "expresses the aim of Congress to impose on the bargaining representative of a craft or class of employees the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them." *Steele, supra,* 202-203.

Not long after, the Court held that the provisions of the National Labor Relations Act, granting unions in the private sector the right to act as exclusive representatives, imposed upon those unions the duty of fair representation. *Ford Motor Co*

---

[7] 419 Mich 942 (1984).

[8] Clark, *The duty of fair representation: A theoretical structure,* 51 Tex L R 1119, 1120 (1973).

*v Huffman,* 345 US 330; 73 S Ct 681; 97 L Ed 1048 (1953).

In Michigan, public employees are governed by the public employment relations act (PERA). MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.*

This Court recently held that the "PERA impliedly imposes on labor organizations representing public sector employees a duty of fair representation . . . ." *Goolsby, supra,* 681. We noted that "the rights and responsibilities imposed on labor organizations representing public sector employees by PERA . . . are similar to those imposed on labor organizations representing private sector employees by the NLRA," which has been found to confer upon unions the duty of fair representation. *Id.,* 660-661, n 5. Therefore, being guided by " 'the construction placed on the analogous provisions of the NLRA [National Labor Relations Act] by the [National Labor Relations Board] and the Federal courts,' " we concluded that the PERA confers on public sector employee unions a similar duty of fair representation. *Id.* (quoting *Rockwell v Crestwood School Dist Bd of Ed,* 393 Mich 636.

In the instant case, the Court of Appeals wrote:

> In Michigan, a public employee's union is granted the same power of exclusive representation by § 11 of PERA, MCL 423.211; MSA 17.455(11), as is granted unions in the private sector by § 9 of the NLRA. As in the private sector, the power of exclusive representation implies the duty to represent fairly. [Citation omitted.] . . . We think that, for public employees, the existence of the right to fair representation must be implied from the grant to unions of exclusive bargaining rights. [*Demings v City of Ecorse,* 127 Mich App 608, 616-617; 339 NW2d 498 (1983).]

We have no quarrel with this conclusion.

*Goolsby, supra.* However, the Court of Appeals went on to state:

> The rights enforced by a fair representation suit are not just rights granted by PERA; they are rights arising from the law of contract. While PERA allowed public employers and employees to enter into relationships which gave rise to the right of fair representation, it was the fiduciary or agency relationship and not the statute which gave rise to the duty. Independent of anything in PERA, the right to fair representation exists whenever public employees are represented by an exclusive bargaining agent. We conclude that the rights enforced in a fair representation suit are common-law rights . . . . [*Demings, supra,* 621.]

It is with this conclusion that we disagree.

The parties and the Court of Appeals agree that the duty of fair representation arises because of the aspect of the relationship between the union and its members which allows the union to be the exclusive representative of its members. They further agree that the union's right to act as the exclusive representative is conferred by statute. Beyond this, their arguments diverge.

Plaintiff and the Court of Appeals essentially claim that the fact that the source of the union's right to function as the exclusive representative is statutory is irrelevant to the determination of the source of the members' corollary right to fair representation. In plaintiff's words:

> If a union's position as exclusive representative arose merely by contract or practice rather than by statute, the rationale for imposing the duty of fair representation would be the same.

Defendant, on the other hand, argues that the determination of the source of the duty is inextri-

cably related to the source of the union's right to act as the exclusive representative. The source of the latter right being statutory, it follows that the source of the corresponding duty is also statutory.

The problem with plaintiff's argument is that the union's right to act as the exclusive representative is *not* created by contract or by practice, but, rather, is made possible by § 11 of the PERA. In fact, it was not until the enactment of the PERA in 1965 that the right of public employees to be represented by exclusive bargaining agents was recognized. *Wayne Co Civil Service Comm, supra,* 374; MCL 423.209; MSA 17.455(9).

It might be argued that there is a significant difference between the union's duty of fair representation in contract negotiation and matters of contract administration such as grievance processing. That is, the union's right to act as the exclusive representative in bargaining is expressly granted by statute in both the public, MCL 423.211; MSA 17.455(11), and private, 29 USC 159(a), sectors. However, neither Congress in the NLRA nor the Legislature in the PERA granted unions exclusive authority in presenting and settling grievances. 29 USC 159(a); MCL 423.211; MSA 17.455(11).

These statutes provide:

> (a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided* [emphasis in original], *That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such griev-*

*ances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect* [emphasis added]: *Provided further,* [emphasis in original], That the bargaining representative has been given opportunity to be present at such adjustment. [29 USC 159(a).]

Representatives designated or selected for purposes of collective bargaining by the majority of the public employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the public employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment, and shall be so recognized by the public employer: *Provided, That any individual employee at any time may present grievances to his employer and have the grievances adjusted, without intervention of the bargaining representative, if the adjustment is not inconsistent with the terms of a collective bargaining contract or agreement then in effect,* provided that the bargaining representative has been given opportunity to be present at such adjustment. [Emphasis added. MCL 423.211; MSA 17.455(11).]

Nevertheless, unions typically assert in collective bargaining agreements the exclusive power in the grievance realm.[9] Thus, the argument continues, this power of the unions to control the grievance procedure derives not from any statute, but from the collective agreement. Proponents of this theory[10] assert that the source of the duty of fair representation in this context is found in general contract law principles, *e.g.,* agent-principal, fiduciary-beneficiary.

---

[9] See Feller, *A general theory of the collective bargaining agreement,* 61 Cal L R 663 (1973).

[10] See Summers, *The individual employee's rights under the collective agreement: What constitutes fair representation?,* 126 U Pa L R 251, 253-257 (1977).

The United States Supreme Court held that in the private sector the statutory duty of fair representation applies in matters of contract administration. *Conley v Gibson,* 355 US 41; 78 S Ct 99; 2 L Ed 2d 80 (1957); *Humphrey v Moore,* 375 US 335; 84 S Ct 363; 11 L Ed 2d 370 (1964). And, in *Vaca v Sipes, supra,* 186, 191, the Court wrote that "Congress . . . conferr[ed] upon employees and unions the power to establish exclusive grievance procedures" and that "the individual employee has [no] . . . absolute right to have his grievance" processed.

This conclusion was based on the Court's adoption of Professor Cox's view that, in spite of the language of 29 USC 159(a), Congress did not intend that the individual should have a "right" to present grievances, but only that the employer should have a "privilege" to listen.[11]

Similarly, the Michigan Court of Appeals, in *Mellon v Fitzgerald Bd of Ed,* 22 Mich App 218; 177 NW2d 187 (1970), interpreted MCL 423.211; MSA 17.455(11), the PERA provision comparable to 29 USC 159(a), as *permitting* an employer to negotiate directly with an individual grievant, but not as *obligating* an employer to process such a grievance. Thus, it appears that there is statutory authority for exclusive union control over the grievance procedure.

Moreover, the relationship between unions and their members is not a true agency or fiduciary one. This Court addressed the nature of that relationship in the context of grievance processing in *Lowe v Hotel & Restaurant Employees Union,* 389 Mich 123, 145-146; 205 NW2d 167 (1973):

In many ways, the relationship between a union

---

[11] Cox, *Rights under a labor agreement,* 69 Harv L R 601, 624 (1956).

and its member is a fiduciary one. Certainly, it is a relationship of fidelity, of faith, of trust, and of confidence.

If the courts have stopped short of declaring the union and member relationship a fully fiduciary one, it is because the union, by its nature, has a divided loyalty.

It must be faithful to each member, to be sure, but it must be faithful to all of the members at one and the same time.

The union must be concerned for the common good of the entire membership. This is its first duty.

That duty of concern for the good of the total membership may sometimes conflict with the needs, the desires, even the rights of an individual member.

When the general good conflicts with the needs or desires of an individual member, the discretion of the union to choose the former is paramount.

When the general good conflicts with the legal or civil rights of an individual member, the courts will recognize those rights and enforce them as against the will of the majority of the union membership.

In the area of grievances, the courts have held that the union has considerable discretion to decide which grievances shall be pressed and which shall be settled. It has been said that the union has latitude to investigate claimed grievances by members against their employers, and has the power to abandon frivolous claims. *Vaca v Sipes,* 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1967).

It has been held that an individual member does not have the right to demand that his grievance be pressed to arbitration, and the union "obviously" is not required to carry every grievance to the highest level, but must be permitted to assess each with a view to individual merit. *Gunkel v Garvey,* 45 Misc 2d 435; 256 NYS2d 953 (1964).

Having regard for the good of the general membership, the union is vested with discretion which

permits it to weigh the burden upon contractual grievance machinery, the amount at stake, the likelihood of success, the cost, even the desirability of winning the award, against those considerations which affect the membership as a whole.

Therefore, we conclude that a union's duty to fairly represent employees in grievance processing is implied from its statutorily granted power to act as the exclusive employee representative.

### III

We agree with the majority that the exclusion of plaintiff from the arbitration hearing did not, as a matter of law, constitute a violation of his right to fair representation.

### Conclusion

We would hold that: (1) the MERC has exclusive jurisdiction of public employees' fair representation claims; (2) the duty of fair representation is statutorily derived; and (3) the exclusion of plaintiff from the arbitration hearing did not, as a matter of law, violate plaintiff's right to fair representation.

Inasmuch as we believe that the MERC has exclusive jurisdiction of plaintiff's claim against the defendant union, we would reverse the decision of the Court of Appeals. Therefore, we respectfully dissent.

CAVANAGH and BOYLE, JJ., concurred with RILEY, J.